MARGARET PORTER, Plaintiff in Error, *v.* GEORGE W. EWING, Defendant in Error.

### ERROR TO THE SUPERIOR COURT OF CHICAGO.

Where lands are purchased by A., under a contract with B., that B. should furnish the money, and A. should make the purchases in B.'s name, and also make sales in his discretion, as B.'s agent, and that A. should have one-half of the profits of the business; in such a case, A. has no title to the lands, but only to the profits, and if he dies, his widow is not entitled to dower in such lands.

After a sale by A., B. holds the lands in trust for the purchaser, but previous to such sale he holds them in his own right.

THIS was a petition for dower, by plaintiff in error against defendant in error.

The evidence shows that Wm. H. Brown and Wm. Porter, plaintiff's husband, entered into a verbal agreement that Brown was to furnish $1,000, and Porter was to trade with it, and to have one-half of the profits made by his speculations in loaning it, or in buying and selling, and trading generally. That the land in controversy was bought by Porter with a portion of this money, and the title taken in Brown's name; that afterwards, Porter sold one undivided quarter to one March, who sold to E. W. and G. W. Ewing, and another undivided quarter to Duncan. That Brown never received any portion of the money from these sales, but was informed by Porter, by letter, that the sales had been made. That afterwards, Brown, by agreement with Duncan and the Ewings, divided the land and deeded to each their respective portions.

That the thousand dollars was never refunded to Brown, but that the understanding was, that the sales to March and Duncan covered Porter's interest in the land, as he retained all the proceeds from those sales, and Brown kept the remainder as his portion. There were various other transactions between the parties, and partial settlements made from time to time. After the division between Brown and the Ewings, Porter and Brown had a general settlement, at which time Brown deeded to Porter certain lands in Sangamon county, in settlement of all equitable claims which Porter might have upon him under the agreement, and took a receipt reciting the fact.

Under this state of facts, the court below dismissed the petition, and the widow asks a reversal of that decision.

SCATES, MCALLISTER & JEWETT, for Plaintiff in Error.

MATHER, TAFT & KING, for Defendant in Error.

CATON, C. J. With the view we take of this case, it must be determined by the construction of the contract between Brown and Porter. That contract rested entirely in parol. By it Brown was to place one thousand dollars in the hands of Porter, who was to operate with it as he saw proper, taking titles to property purchased or choses in action obtained for or with it, in the name of Brown, and for his skill, care and trouble in the business, was to have, as his compensation, one-half of the profits derived from the operations with the thousand dollars. This is the substance of the contract, as stated by Mr. Brown. It seems to us, there can be no doubt that under

this contract, Porter had and was to have no interest in the land or other property purchased with this money. He had an interest in one-half of the profits, and in that only. This was a mode of compensation for his services. There were no profits until the final settlement of the concern, properly speaking, unless the parties chose to treat a part of the property or its proceeds as profits, and divide it as such. While the business was still in progress, the value of the property might be more than the thousand dollars one day, and another day less. To-day there might be an apparent profit, and to-morrow a loss. Counsel does not and cannot pretend that Porter had an equitable title to anything but that which was profits, and how was it possible to say that this piece of land was profits more than another? Surely the widow was not dowable of an undivided half of all the lands purchased with or belonging to this fund, else she might claim dower in ten times the amount of the entire value of the property belonging to the fund at any one time. When Porter sold the undivided half of the Chicago property to Duncan and to Ewing, that property had not been set apart as profits, and the money which he received for it was a part of the fund, and belonged to Brown, until he subsequently agreed to treat that property as profits, and allowed Porter to retain that money as his share of those profits, and to retain himself the balance of the land as his share of those profits. Porter was authorized, by the original agreement, to sell the land as Brown's agent, and after he had sold it, Brown held the legal title to the interest thus sold, in trust for the purchasers, the same as if he had sold it himself. Then, for the first time, did he hold it in trust for others and not in his own right, and this trust he performed by dividing the property with the purchasers, and deeding to them their proportions, respectively. If at this time there was an understanding between Brown and Porter, that the money received by Porter for the sale of the half, and the remaining half not sold should be treated as profits, and that Porter should retain the money which he had received as his share, and Brown should retain the portion not sold as a portion of the profits, there certainly was no such arrangement between them at the time Porter sold to Duncan and Ewing. Was there ever a time, when Porter could go to Brown and demand a deed of an undivided half of this or any other property, belonging to this concern? Was there ever a time when Brown had not the right to retain the title to the whole, to insure to himself the reimbursement of the thousand dollars? Until Porter was in a position to demand a deed of Brown without doing anything more on his part, he

had not such an equitable estate in the premises, as to entitle his widow to dower in them. *Owen* v. *Robbins*, 19 Ill. R. 545. There was never such a time, and the right of dower never attached.

The decree is affirmed.

*Decree affirmed.*